**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| COUNTRY JOE STEVENS, | ) | |
| | ) | 3:11-cv-00558-LRH-VPC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| ALYSON JUNGEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | August 15, 2013 |
| | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#48).[1] Plaintiff opposed (#55) and defendants replied (#57).[2]  The court has thoroughly reviewed the record, and recommends that defendants' motion for summary judgment (#48) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Country Joe Stevens ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#8).  Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials: (1) confiscated plaintiff's hot-pot in retaliation for his prison grievance activity, in violation of the First Amendment; (2) transferred plaintiff's medically necessary wheelchair pusher out of plaintiff's dorm in retaliation for his prison grievance activity, in violation

---

[1] Refers to the court's docket numbers.
[2] The court notes that plaintiff also filed a sur-reply (#58). LR 7-2(e) provides for the filing of a motion, opposition and reply.  It does not provide for the filing of a sur-reply.  Accordingly, the court will not consider Docket No. 58.

-1-

of the First Amendment; (3) subjected plaintiff to cruel and unusual punishment by interfering with plaintiff's medical treatment, in violation of the Eighth Amendment; and (4) treated plaintiff differently than similarly situated inmates, in violation of the Equal Protection Clause of the Fourteenth Amendment (#8, pp. 6-9). The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's First Amendment retaliation claim, his Eighth Amendment medical care claim, and his Fourteenth Amendment equal protection claim to proceed (#7, p. 8). The court notes that the only remaining defendants in this case are Senior Correctional Officer K. Corzine and Caseworker Julie Rexwinkel (#7; #9).

Plaintiff alleges that on June 21, 2010, Correctional Officer A. Jungen confiscated his approved hot-pot (#8, p. 3). On June 23, 2010, plaintiff filed a prison grievance protesting Jungen's actions, but the grievance was denied. *Id.* Thereafter, plaintiff received a notice of charges drafted by defendant Corzine, which stated that Corzine had found plaintiff's hot-pot unattended with boiling water. *Id.* Plaintiff "beat the charges," and his hot-pot was returned. *Id.* Plaintiff also filed grievances protesting Corzine's actions, which were denied. *Id.*

On June 30, 2010, Correctional Officer Jungen, defendant Corzine and Caseworker Buchanan moved plaintiff's approved wheelchair pusher, inmate Andre Woods, out of plaintiff's dorm. *Id.* at 4. This caused plaintiff "excruciating pain." *Id.* On July 27, 2010, plaintiff spoke with Caseworker Buchanan. *Id.* While plaintiff was explaining the problem, defendant Corzine walked into the office and informed plaintiff that inmate Andre Woods had been moved because plaintiff and Woods had called Correctional Officer Jungen a degrading name and had made threats against her and defendant Corzine. *Id.* After some discussion, Corzine asked Caseworker Buchanan to transfer inmate Andre Woods back to plaintiff's dorm. *Id.* at 5.

Plaintiff alleges that defendant Rexwinkel refused to assign him a wheelchair pusher despite orders from Dr. Gedney and Associate Warden of Programs ("AWP") Walsh. *Id.* at 12. Plaintiff also alleges that defendant Rexwinkel accused plaintiff of calling her a "tramp" and threatened to move plaintiff out of his corner bunk and into a bunk in which he would not have easy access to his wheelchair if plaintiff filed the instant complaint. *Id.* at 13. Plaintiff asserts that defendant Corzine and Rexwinkel's actions were vindictive and were meant to cause deliberate pain and suffering. *Id.* at 4. Plaintiff also asserts that defendants treated him differently than other similarly situated inmates, and that their actions did not advance a legitimate penological goal. *Id.* at 9.

In June 2010, NDOC's Administrative Regulation ("AR") 711 defined contraband property as:

- Any item or article not authorized by departmental regulations, or in excess of the maximum quantity permitted, or which is received or obtained from an unauthorized source is contraband.
- Any item or article of property that poses a serious threat to the security of an institution and ordinarily never approved for possession or admission into the institution, and any item or article which may be, or has been authorized for possession at one time, but now is prohibited for possession due to health, fire or safety concerns.
- Any authorized property that has been altered.

(#48-1, Ex. B, p. 2).

Defendants allege that in May 2010, hot-pots that were altered and hot-pots that could boil water were deemed unauthorized (#48-1, Ex. A, ¶ 6). On June 21, 2010, defendant Corzine found plaintiff's hot-pot unattended with boiling water (#48-1, Ex. E). The hot-pot appeared to be altered (tied together with string), and defendant Corzine confiscated it. *Id.* On June 30, 2010, inmate Andre Woods was moved to Unit 1B, cell 7E (#49, Ex. G). From June 24, 2010 through July 3, 2010, defendant Corzine was on leave (#49, Ex. H, p. 1).

Defendants move for summary judgment on the grounds that: (1) defendant Rexwinkel should be dismissed from this action, as she had no personal involvement in plaintiff's claimed constitutional deprivations; (2) plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine confiscated plaintiff's hot-pot in accordance with NDOC property regulations, and he was on leave when plaintiff's wheelchair pusher was moved; (3) plaintiff cannot prevail on his Eighth Amendment deliberate indifference claim because defendant Corzine was on leave when plaintiff's wheelchair pusher was moved; (4) plaintiff cannot prevail on his Fourteenth Amendment equal protection claim because defendant Corzine was on leave when plaintiff's wheelchair pusher was moved; and (5) defendant Corzine is entitled to qualified immunity (#48, pp. 5-10). Defendants attach several exhibits in support of their motion for summary judgment, including: (1) the declaration of Eugene Murguia (#48-1, Ex. A); (2) the applicable version of NDOC's AR 711 (#48-1, Ex. B);[3] (3) two emails from Eugene Murguia regarding hot-pot confiscations (#48-1, Ex. C);[4] (4) plaintiff's notice of charges (Disciplinary Form I) for Offense in Custody ("OIC") No. 310552;[5] (5) inmate Andre Woods's Offender Movement History Report from June 1, 2010 through July 1, 2011 (#49, Ex. G (*sealed*));[6] and (6) defendant Corzine's Attendance Card for 2010 (#49, Ex. H (*sealed*)).[7]

Plaintiff opposes defendants' motion on the grounds that: (1) there is no reason to dismiss defendant Rexwinkel from this action, as plaintiff adequately set forth allegations against her in his complaint; and (2) it is immaterial that defendant Corzine was not at work the day plaintiff's wheelchair pusher was moved because defendant Corzine conspired with dismissed defendants Jungen and Buchanan to effectuate the move (#55, pp. 11-13).

---

[3] Authenticated by the declaration of Eugene Murguia (#48-1, Ex. A, ¶ 5).
[4] Authenticated by the declaration of Eugene Murguia (#48-1, Ex. A, ¶ 6).
[5] Authenticated by the declaration of Janine M. Barros (#48-1, Ex. D, ¶ 6).
[6] Authenticated by the declaration of Shannon Moyle (#48-1, Ex. F, ¶ 4).
[7] Authenticated by the declaration of Janine M. Barros (#48-1, Ex. D, ¶ 7).

The court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  LAW & ANALYSIS

### A.  RELEVANT LAW

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

#### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. ANALYSIS**

    **1. Defendant Julie Rexwinkel**

Defendants ask the court to dismiss defendant Rexwinkel from this action on the ground that plaintiff did not make any allegations against her in his complaint (#48, p. 5). In defendants' reply memorandum, they obviously realized their mistake, and acknowledged that plaintiff did make allegations against defendant Rexwinkle at the end of his complaint in a section titled "additional space" (#57, p. 5). Defendants then asked the court to dismiss defendant Rexwinkel from this action on the ground that the court did not recognize plaintiff's "hidden" allegations in its screening order, and did not provide a sufficient factual basis to state a claim against her. *Id.*

In plaintiff's complaint, he clearly alleges that defendant Rexwinkel refused to assign him a wheelchair pusher despite orders from Dr. Gedney and AWP Walsh, and that her inaction interfered with "his Eighth Amendment right to adequate medical care" (#8, p. 12).[8] The court has also previously referred to defendant Rexwinkel's involvement in this case in its November 7, 2012, Report and Recommendation (#40), which was filed approximately two months before defendants submitted their motion for summary judgment (#48). However, the court recognizes that its screening order did not reference defendant Rexwinkel, nor did it specify which defendants were involved in each of plaintiff's claims (#7, p. 8).

The court recommends that defendants' request to dismiss defendant Rexwinkel for lack of personal participation be denied. However, the court recommends that defendants be permitted to re-file a motion for summary judgment on defendant Rexwinkel's behalf to ensure that no prejudice inures to defendants based on any misunderstanding. Defendants will have twenty (20) days from the date of this order to file a motion for summary judgment on defendant Rexwinkel's behalf.

---

[8] Plaintiff also alleges that defendant Rexwinkel threatened to move his bed to prevent him from filing the instant lawsuit. *Id.* at 13. The court finds that this allegation is insufficient to make out a First Amendment retaliation claim.

### 2. First Amendment Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Federal courts were not created to supervise prisons, but to enforce the constitutional rights of all persons, including prisoners.  "We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." *Cruz v. Beto*, 405 U.S. 319, 321 (1982).  But prisoners, like other individuals, have the right to petition the government for redress of grievances, which includes the First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . ..'" *Rhodes*, 408 F.3d at 567 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)).  "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes,* 408 F.3d at 567.

*Confiscation of Plaintiff's Hot-Pot*

Defendant Corzine contends that plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine confiscated plaintiff's hot-pot in accordance with NDOC property regulations (#48, p. 6). The problem with this argument is that defendant Corzine has not submitted any *evidence* that he confiscated plaintiff's hot-pot for legitimate penological reasons and not in retaliation for plaintiff's protected grievance activity. Defendant Corzine has merely submitted the written notice of charges, in which he states that he discovered plaintiff's hot-pot unattended with boiling water, the hot-pot appeared to be altered, and he confiscated it (#48-1, Ex. E). Defendant Corzine then asks the court to reach the conclusion that he confiscated plaintiff's hot-pot for a valid non-retaliatory purpose (#57, p. 4). While this may be true, defendant Corzine did not submit a sworn declaration stating his reasons for confiscating plaintiff's hot-pot. Further, plaintiff has submitted evidence showing that he "beat" the notice of charges and that his hot-pot was returned to him (#55, pp. 26, 28, 35). This indicates that plaintiff's hot-pot was not unauthorized and begs the question why defendant Corzine confiscated it in the first place. Without a declaration from defendant Corzine, the court is unable to answer this question.

Defendant Corzine also contends that plaintiff cannot show that defendant Corzine's conduct failed to advance a legitimate penological goal (#48, p. 6). However, as the party bringing the motion for summary judgment, it is defendant Corzine's burden—not plaintiff's burden—to submit authenticated evidence showing that he confiscated plaintiff's hot-pot for a legitimate penological purpose. *Celotex Corp.*, 477 U.S. at 323. Defendant Corzine argues that the confiscation of hot-pots that can boil water and hot-pots that have been altered advances prison safety (#48, p. 6). This may be true. However, defendant Corzine has failed to submit any *evidence* that the confiscation of *plaintiff's* hot-pot was related to NNCC's legitimate penological goal of advancing prison safety. As

noted above, plaintiff's hot-pot was returned to him.  Thus, defendant Corzine's motivation for confiscating plaintiff's hot-pot constitutes a genuine issue of material fact for trial.

Defendant Corzine has failed to submit any evidence that he confiscated plaintiff's hot-pot for a legitimate non-retaliatory penological purpose.  *See Rhodes*, 408 F.3d at 567 (purely retaliatory actions taken against a prisoner for exercising his First Amendment rights violate the Constitution apart from any underlying misconduct they are designed to shield).  Accordingly, the court recommends that defendant Corzine's motion for summary judgment be denied as to plaintiff's First Amendment retaliation claim related to the confiscation of his hot-pot.

*Move of Plaintiff's Wheelchair Pusher*

Defendant Corzine contends that plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine did not participate in the June 30, 2010, bed move of plaintiff's wheelchair pusher (#48, p. 6; #57, p. 4).  In support of this contention, defendant Corzine has submitted his attendance card from the year 2010, which indicates that he was on leave from June 24, 2010 through July 3, 2010 (#49, Ex. H, p. 1).

The court finds that defendant Corzine's attendance card is insufficient to show that he was not involved in inmate Andre Woods's bed move.  Plaintiff alleges that defendant Corzine conspired with dismissed defendants Jungen and Buchanan to move plaintiff's wheelchair pusher in retaliation for plaintiff's protected grievance activity (#8, p. 4; #55, pp. 11-12).  If this is true, it is irrelevant whether defendant Corzine was actually at work on June 30, 2010 (the day of the bed move), as defendant Corzine could still have personally participated in this event through collusion with the dismissed defendants.  Defendants state that they have been unable to locate any documentation explaining the rationale for inmate Woods's bed move (#48, p. 6).  Defendant Corzine has also failed to provide the court with any information concerning whether defendant Corzine, Correctional

Officer Jungen, or Caseworker Buchanan could have even effectuated a bed move in their employment positions at NNCC.[9]

The court finds that whether defendant Corzine personally participated in the June 30, 2010, bed move of plaintiff's wheelchair pusher constitutes a genuine issue of material fact for trial. Accordingly, the court recommends that defendant Corzine's motion for summary judgment be denied as to plaintiff's First Amendment retaliation claim related to the move of his wheelchair pusher.

### 3. Eighth Amendment Deliberate Indifference to a Serious Medical Need

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton

---

[9] Defendant Corzine relies upon one of plaintiff's inmate kites to support his claim that he was not involved in the June 30, 2010, bed move. In the kite, plaintiff states: "there was a situation happen[ed] in our dorm and other inmates included my pusher in their crap and he was put in another wing" (#55-1, Ex. H, p. 2). Plaintiff's opinion of what may have precipitated inmate Woods's bed move does not fulfill defendant Corzine's burden of submitting authenticated evidence showing that there are no genuine issues of material fact for trial. Although plaintiff may have thought inmate Woods's bed move was somehow related to this unspecified incident—lessening the credibility of plaintiff's retaliation claim—it does not eliminate all issues of material fact regarding defendant Corzine's involvement in this claim.

infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Defendant Corzine claims that he could not have been deliberately indifferent to plaintiff's serious medical needs because he was not involved in the June 30, 2010, bed move of plaintiff's wheelchair pusher (#48, p. 7). As previously noted, the fact that defendant Corzine was on leave on June 30, 2010, does not mean that he did not personally participate in inmate Woods's bed move. Whether defendant Corzine was involved in moving plaintiff's wheelchair pusher, and whether, if he was involved, defendant Corzine effectuated the move to intentionally interfere with plaintiff's medical treatment, are genuine issues of material fact for trial. Accordingly, the court recommends that defendant Corzine's motion for summary judgment be denied as to plaintiff's Eighth Amendment claim.

### 4. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Where state action "does not implicate a fundamental right or suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Plaintiff alleges that defendants deviated from standard practice when they retaliated against him by interfering with his medical treatment (#8, p. 9 ("I am not aware of any other inmate having their medical treatment stop[p]ed or delayed because of exercising his civil rights.")). Plaintiff also generally alleges that defendants treated him differently than other similarly situated inmates and that their actions did not advance a legitimate penological goal, such as preserving institutional order or discipline.[10] *Id.* Plaintiff does not state that he is a member of a protected class. Thus, to merit summary judgment in his favor, defendant Corzine need only submit some evidence that plaintiff's allegedly disparate treatment rationally furthers a legitimate penological interest. *See e.g., McGinnis v. Royster*, 410 U.S. 263, 270 (1973); *Squaw Valley*, 375 F.3d at 944. Defendant Corzine has failed to do so.

As noted above, the fact that defendant Corzine was on leave on June 30, 2009, does not mean that he did not personally participate in inmate Woods's bed move. Further, although defendant Corzine argues that "[p]laintiff cannot show that the move of his wheelchair pusher had no rational basis, or failed to advance a legitimate penological goal" (#48, p. 9), it is defendant

---

[10] Plaintiff's equal protection claim does not appear to allege differential treatment with respect to the confiscation of his hot-pot.

Corzine's burden—not plaintiff's burden—to submit authenticated evidence showing that the move of plaintiff's wheelchair pusher was rationally related to a legitimate penological purpose. *Celotex Corp.*, 477 U.S. at 323. Defendant Corzine concedes that he has been unable to locate any documentation explaining the rationale for inmate Woods's bed move (#48, p. 9). Accordingly, the court finds that defendant Corzine has failed to meet his burden on summary judgment, and recommends that defendant Corzine's motion for summary judgment be denied as to plaintiff's Fourteenth Amendment equal protection claim.

### 5. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In considering a claim of qualified immunity, the court must determine 'whether the facts that plaintiff has alleged … make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Whether a right is clearly established turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* "[A]ll but the plainly incompetent or those who knowingly violate the law have immunity from suit; officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation." *Id*.

When analyzing a claim of qualified immunity, the court must view the facts in the light most favorable to plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, there are outstanding questions of material fact as to defendant Corzine's motivation for confiscating plaintiff's hot-pot.

There are also outstanding questions of material fact as to defendant Corzine's participation in the move of plaintiff's wheelchair pusher. When viewing the facts in the light most favorable to plaintiff, defendant Corzine confiscated plaintiff's hot-pot and moved plaintiff's medically necessary wheelchair pusher in retaliation for his protected grievance activity. The general law concerning plaintiff's constitutional claims was clearly established at the time of the events alleged in plaintiff's complaint. *See Brodheim*, 584 F.3d at 1269 (under the First Amendment, prisoners have the right to file grievances against prison officials and be free from retaliation for doing so); *Hutchinson*, 838 F.2d at 394 (under the Eighth Amendment, a prison official's intentional interference with a prisoner's medical treatment evidences deliberate indifference); *Squaw Valley*, 375 F.3d at 1087 (under the Fourteenth Amendment, prison officials may not treat prisoners differently from others similarly situated without a rational basis). There is simply no merit to the argument that defendant Corzine should be shielded from liability because he did not know that intentional retaliation against a prisoner is unlawful or because he believed such conduct was reasonable.

Upon resolution of the factual issues, defendant Corzine may be relieved of liability; however, if plaintiff's version of events were to prevail at trial, a jury might decide that the conduct alleged amounted to a constitutional violation. Under such circumstances, the alleged actions are not protected by qualified immunity. Accordingly, the court recommends that defendant Corzine's motion for summary judgment be denied based on qualified immunity.

## III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court recommends that defendants' motion for summary judgment (#48) be **DENIED** as there are multiple genuine issues of material fact for trial. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to FED.R.APP.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#48) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that defendants' request to dismiss defendant Rexwinkel for lack of personal participation be **DENIED**. However, the court will permit defendants to re-file a motion for summary judgment on defendant Rexwinkel's behalf within twenty (20) days from the date of this order.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **DENIED** as to plaintiff's First Amendment retaliation claims.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **DENIED** as to plaintiff's Eighth Amendment deliberate indifference claim.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **DENIED** as to plaintiff's Fourteenth Amendment equal protection claim.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **DENIED** on the basis of qualified immunity.

**DATED:  August 15, 2013.**

*/s/ Valerie P. Cooke*

_____
**UNITED STATES MAGISTRATE JUDGE**