# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COUNTRY JOE STEVENS,       ) | 3:11-cv-00558-LRH-VPC |
|         Plaintiff,   ) | |
|            ) | |
|     v.       ) | **REPORT AND RECOMMENDATION** |
|            ) | **OF U.S. MAGISTRATE JUDGE** |
| ALYSON JUNGEN, *et al.,*   ) | |
|            ) | |
|         Defendants.   ) | February 4, 2014 |
| _____) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. On January 14, 2013, defendants moved for summary judgment in their favor as to all claims (#48).[1] On August 15, 2013, this court submitted a Report and Recommendation to the District Court that recommended that defendants' motion be denied as to both defendants, Julie Rexwinkel and Kenneth Corzine (#59). Specifically, this court recommended that the motion be denied as to Corzine because he had failed to include his declaration and failed to otherwise establish that no genuine dispute of material fact existed as to the claims against him. *Id.* at 9-14. This court also recommended that defendants' request that Rexwinkel be dismissed from this action for lack of personal participation be denied; however, the court recommended that Rexwinkel be granted leave to file a motion for summary judgment. *Id.* Plaintiff filed his non-objection to the Report and Recommendation (#59). Defendant Corzine filed an objection and included supplemental evidence, namely, his declaration (#61).

---

[1] Refers to the court's docket numbers.

On September 25, 2013, the District Court issued an order that expressed its view that this evidence should have been submitted in support of the motion for summary judgment and that good cause had not been shown for its omission (#67).  However, the District Court stated that the declaration is material to the motion, and therefore, the District Court recommitted the matter to this court to determine whether the supplemental evidence should be considered and whether it may have any effect on the original Report and Recommendation.  *Id.*, citing 28 U.S.C. § 636(b)(1)(C); *United States v. Howell*, 231 F.3d 615, 621-622 (9th Cir. 2000).  The District Court further noted that defendant Rexwinkel had subsequently submitted a motion for summary judgment and that the matters are readily combined (#67).  This Report and Recommendation now follows and considers both motions for summary judgment.

Federal Rule of Civil Procedure 72(b)(3) provides that a District Court "may accept, reject, or modify the [Report and Recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions."  The District Court may, at its discretion, consider evidence presented for the first time in a party's objection to a Report and Recommendation.  *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

Here, the August 15, 2013 Report and Recommendation made it clear that the omission of Corzine's declaration was likely fatal to his motion for summary judgment (#59, p. 9).  Plaintiff filed a response to defendant Corzine's objections, which the court has considered, and thus plaintiff has had an opportunity to respond (#63).  Accordingly, the court will consider Corzine's supplemental evidence.

Therefore, once again before the court is defendants' motion for summary judgment (#48). Plaintiff opposed (#55) and defendants replied (#57).[2]   Also before the court is defendant

---

[2] The court notes that plaintiff also filed a sur-reply (#58).  LR 7-2(e) provides for the filing of a motion, opposition and

Rexwinkel's motion for summary judgment (#68).  Plaintiff opposed (#70), and Rexwinkel replied (#73).  The court has thoroughly reviewed the record, and recommends that defendants' motion for summary judgment (#48) be granted in part and denied in part.  The court further recommends that defendant Rexwinkel's motion for summary judgment (#68) be denied.

## I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Country Joe Stevens ("plaintiff"), a *pro se* inmate, is incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#8).  Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials: (1) confiscated plaintiff's hot-pot in retaliation for his prison grievance activity, in violation of the First Amendment; (2) transferred plaintiff's medically necessary wheelchair pusher out of plaintiff's dorm in retaliation for his prison grievance activity, in violation of the First Amendment; (3) subjected plaintiff to cruel and unusual punishment by interfering with plaintiff's medical treatment, in violation of the Eighth Amendment; and (4) treated plaintiff differently than similarly situated inmates, in violation of the Equal Protection Clause of the Fourteenth Amendment (#8, pp. 6-9).  The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's First Amendment retaliation claim, his Eighth Amendment medical care claim, and his Fourteenth Amendment equal protection claim to proceed (#7, p. 8).  The court notes that the only remaining defendants in this case are Senior Correctional Officer K. Corzine and Caseworker Julie Rexwinkel (#7; #9).

In his complaint, plaintiff alleges that on June 21, 2010, Correctional Officer A. Jungen confiscated his approved hot-pot (#8, p. 3).  On June 23, 2010, plaintiff filed a prison grievance protesting Jungen's actions, but the grievance was denied.  *Id.*  Thereafter, plaintiff received a notice

---

reply.  It does not provide for the filing of a sur-reply.  Accordingly, the court will not consider Docket No. 58.

of charges drafted by defendant Corzine, which stated that Corzine had found plaintiff's hot-pot unattended with boiling water.  *Id.*  Plaintiff "beat the charges," and his hot-pot was returned.  *Id.*  Plaintiff also filed grievances protesting Corzine's actions, which were denied.  *Id.*

On June 30, 2010, Correctional Officer Jungen, defendant Corzine and Caseworker Buchanan moved plaintiff's approved wheelchair pusher, inmate Andre Woods, out of plaintiff's dorm.  *Id.* at 4.  This caused plaintiff "excruciating pain."  *Id.*  On July 27, 2010, plaintiff spoke with Caseworker Buchanan.  *Id.*  While plaintiff was explaining the problem, defendant Corzine walked into the office and informed plaintiff that inmate Andre Woods had been moved because plaintiff and Woods had called Correctional Officer Jungen a degrading name and had made threats against her and defendant Corzine.  *Id.*  After some discussion, Corzine asked Caseworker Buchanan to transfer inmate Andre Woods back to plaintiff's dorm.  *Id.* at 5.

Plaintiff alleges that defendant Rexwinkel refused to assign him a wheelchair pusher despite orders from Dr. Gedney and Associate Warden of Programs ("AWP") Walsh.  *Id.* at 12.  Plaintiff also alleges that defendant Rexwinkel accused plaintiff of calling her a "tramp" and threatened to move plaintiff out of his corner bunk and into a bunk in which he would not have easy access to his wheelchair if plaintiff filed the instant complaint.  *Id.* at 13.  Plaintiff asserts that defendant Corzine and Rexwinkel's actions were vindictive and were meant to cause deliberate pain and suffering.  *Id.* at 4.  Plaintiff also asserts that Corzine and other officers treated him differently than other similarly situated inmates, and that their actions did not advance a legitimate penological goal.  *Id.* at 9.

In June 2010, NDOC's Administrative Regulation ("AR") 711 defined contraband property as:

- Any item or article not authorized by departmental regulations, or in excess of the maximum quantity permitted, or which is received or obtained from an unauthorized source is contraband.
- Any item or article of property that poses a serious threat to the security of an

institution and ordinarily never approved for possession or admission into the institution, and any item or article which may be, or has been authorized for possession at one time, but now is prohibited for possession due to health, fire or safety concerns.

- Any authorized property that has been altered.

(#48-1, Ex. B, p. 2).

Defendants allege that in May 2010, hot-pots that were altered and hot-pots that could boil water were deemed unauthorized (#48-1, Ex. A, ¶ 6).  On June 21, 2010, defendant Corzine found plaintiff's hot-pot unattended with boiling water (#48-1, Ex. E).  The hot-pot appeared to be altered (tied together with string), and defendant Corzine confiscated it.  *Id.*  On June 30, 2010, inmate Andre Woods was moved to Unit 1B, cell 7E (#49, Ex. G).  From June 24, 2010 through July 3, 2010, defendant Corzine was on leave (#49, Ex. H, p. 1).

Defendants originally moved for summary judgment on the grounds that: (1) defendant Rexwinkel should be dismissed from this action, as she had no personal involvement in plaintiff's claimed constitutional deprivations; (2) plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine confiscated plaintiff's hot-pot in accordance with NDOC property regulations, and he was on leave when plaintiff's wheelchair pusher was moved; (3) plaintiff cannot prevail on his Eighth Amendment deliberate indifference claim because defendant Corzine was on leave when plaintiff's wheelchair pusher was moved; (4) plaintiff cannot prevail on his Fourteenth Amendment equal protection claim because defendant Corzine was on leave when plaintiff's wheelchair pusher was moved; and (5) defendant Corzine is entitled to qualified immunity (#48, pp. 5-10).   Defendants attach several exhibits in support of their motion for summary judgment, including: (1) the declaration of Eugene Murguia (#48-1, Ex. A); (2) the applicable version of

NDOC's AR 711 (#48-1, Ex. B);[3] (3) two emails from Eugene Murguia regarding hot-pot confiscations (#48-1, Ex. C);[4] (4) plaintiff's notice of charges (Disciplinary Form I) for Offense in Custody ("OIC") No. 310552;[5] (5) inmate Andre Woods's Offender Movement History Report from June 1, 2010 through July 1, 2011 (#49, Ex. G (*sealed*));[6] and (6) defendant Corzine's Attendance Card for 2010 (#49, Ex. H (*sealed*)).[7]

Plaintiff opposes defendants' motion on the grounds that: (1) there is no reason to dismiss defendant Rexwinkel from this action, as plaintiff adequately set forth allegations against her in his complaint; and (2) it is immaterial that defendant Corzine was not at work the day plaintiff's wheelchair pusher was moved because defendant Corzine conspired with dismissed defendants Jungen and Buchanan to effectuate the move (#55, pp. 11-13).

With the court's leave, defendant Rexwinkel has now filed a separate motion for summary judgment (#68).  She argues that plaintiff never submitted any request to her about an assignment of a wheelchair pusher and that she did not act with deliberate indifference to his serious medical needs because she had seen him regularly moving himself around in his wheelchair with his feet and was unaware of any excessive danger to plaintiff from his doing so, as opposed to having a wheelchair pusher. [8] *Id.* at 7-8.  Rexwinkel attaches several exhibits in support of her motion:  (1) the only two kites submitted by plaintiff during the relevant time period (Ex. B);[9]  (2) declaration of defendant

---

[3] Authenticated by the declaration of Eugene Murguia (#48-1, Ex. A, ¶ 5).
[4] Authenticated by the declaration of Eugene Murguia (#48-1, Ex. A, ¶ 6).
[5] Authenticated by the declaration of Janine M. Barros (#48-1, Ex. D, ¶ 6).
[6] Authenticated by the declaration of Shannon Moyle (#48-1, Ex. F, ¶ 4).
[7] Authenticated by the declaration of Janine M. Barros (#48-1, Ex. D, ¶ 7).
[8] Plaintiff also alleges that defendant Rexwinkel threatened to move his bed to prevent him from filing the instant lawsuit (#8, p. 13).  The court finds that this allegation is insufficient to make out a First Amendment retaliation claim.
[9] Authenticated by the declaration of NNCC Administrative Assistant Blaise Satariano, a custodian of records for NNCC's institutional files (#68, Ex. A).

Julie Rexwinkel (Ex. C); (3) declaration of NNCC Associate Warden Elizabeth "Lisa" Walsh (Ex. D); and (4) medical orders dated November 9, 2009 for Velcro-strap sneakers for plaintiff (Ex. F).[10]

Plaintiff opposes defendant Rexwinkel's motion on the grounds that he personally told her of Dr. Gedney's medical order that he be assigned a wheelchair pusher and that she refused to assist plaintiff in retaliation for his filing grievances against her "good friends" officers Jungen and Corzine (#70). Plaintiff attaches as exhibits his sworn affidavit as well as several kites (#70, pp. 11-13; Ex.'s A-E).

## II.  LEGAL STANDARDS

The court notes at the outset that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### A.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

---

[10] Authenticated by the declaration of NNCC Health Information Coordinator Wendy M. McDaniel (#68, Ex. E).

### B. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.    ANALYSIS

**A.  Defendants Julie Rexwinkel's and Kenneth Corzine's Motion for Summary Judgment (#48)**

**1.  Defendant Julie Rexwinkel**

In the first motion for summary judgment, defendants ask the court to dismiss defendant Rexwinkel from this action on the ground that plaintiff did not make any allegations against her in his complaint (#48, p. 5).  In defendants' reply memorandum, they obviously realized their mistake, and acknowledged that plaintiff did make allegations against defendant Rexwinkle at the end of his complaint in a section titled "additional space" (#57, p. 5).  Defendants then asked the court to dismiss defendant Rexwinkel from this action on the ground that the court did not recognize plaintiff's "hidden" allegations in its screening order, and did not provide a sufficient factual basis to state a claim against her.  *Id.*

In plaintiff's complaint, he clearly alleges that defendant Rexwinkel refused to assign him a wheelchair pusher despite orders from Dr. Gedney and AWP Walsh, and that her inaction interfered with "his Eighth Amendment right to adequate medical care" (#8, p. 12).[11]  The court has also previously referred to defendant Rexwinkel's involvement in this case in its November 7, 2012,

---

[11] Plaintiff also alleges that defendant Rexwinkel threatened to move his bed to prevent him from filing the instant lawsuit.  *Id.* at 13.  The court finds that this allegation is insufficient to make out a First Amendment retaliation claim.

Report and Recommendation (#40), which was filed approximately two months before defendants submitted their motion for summary judgment (#48). However, the court recognizes that its screening order did not reference defendant Rexwinkel, nor did it specify which defendants were involved in each of plaintiff's claims (#7, p. 8).

The court recommends that defendants' request to dismiss defendant Rexwinkel for lack of personal participation be denied. In the first submission of this Report and Recommendation, the court recommended that defendant Rexwinkel be permitted to file a motion for summary judgment to ensure that no prejudice inures to defendants based on any misunderstanding. Defendant Rexwinkel did so (#68), and the court will consider the second motion for summary judgment in turn.

## 2. First Amendment Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Federal courts were not created to supervise prisons, but to enforce the constitutional rights of all persons, including prisoners. "We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." *Cruz v. Beto*, 405 U.S. 319, 321 (1982). But prisoners, like other

individuals, have the right to petition the government for redress of grievances, which includes the First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . ..'"  *Rhodes*, 408 F.3d at 567 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)).  "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *Rhodes,* 408 F.3d at 567.

### *Confiscation of Plaintiff's Hot-Pot*

Defendant Corzine contends that plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine confiscated plaintiff's hot-pot in accordance with NDOC property regulations (#48, p. 6).  Corzine has now submitted his declaration, which attests that the hot-pot was confiscated for the legitimate penological reason of advancing prison safety and not in retaliation for plaintiff's protected grievance activity or for any discriminatory purpose (#61, Ex. A).  Previously, in support of the original motion, he had submitted the authenticated written notice of charges, in which he states that he discovered plaintiff's hot-pot unattended with boiling water, the hot-pot appeared to be altered, and he confiscated it (#48-1, Ex. E).

In his response, plaintiff merely asserts—with nothing more—that Corzine has still failed to offer any evidence and thus has failed to meet his burden on summary judgment as to any claim (#63, p. 2).  Plaintiff asks the District Court to adopt the Report and Recommendation as originally drafted.  *Id.* at 3.

The court now concludes that Corzine has presented evidence to demonstrate an absence of a dispute of material fact as to the hot-pot confiscation while plaintiff has relied solely on his own

conclusory allegations.   Accordingly, the court recommends that defendant Corzine's motion for summary judgment be granted as to plaintiff's First Amendment retaliation claim related to the confiscation of his hot-pot.

### *Move of Plaintiff's Wheelchair Pusher*

Defendant Corzine contends that plaintiff cannot prevail on his First Amendment retaliation claim because defendant Corzine did not participate in the June 30, 2010, bed move of plaintiff's wheelchair pusher (#48, p. 6; #57, p. 4).   In support of this contention, Corzine originally only submitted his attendance card from the year 2010, which indicates that he was on leave from June 24, 2010 through July 3, 2010 (#49, Ex. H, p. 1).   Now, however, Corzine has provided his declaration, which attests that he was not involved in any way with the bed move or with any decision regarding the bed move and that he was not even aware of the June 30, 2010 bed move until after he returned from leave several days later (#61, Ex. A).   While defendants do not address whether Corzine or any unit officers can effectuate bed moves, the court notes that when plaintiff grieved this issue, some of the responses indicated that "custody staff [or unit officers] do not do any bed moves" and that the unit caseworkers make those decisions (#55, Ex.'s D-1, D-7).   Finally, while not determinative, at least one kite submitted by plaintiff himself suggested that the bed move had nothing to do with plaintiff.[12]

The court now concludes that Corzine has presented evidence to demonstrate an absence of a dispute of material fact as to the bed move of plaintiff's wheelchair pusher.   Plaintiff has offered only his conclusory allegations in response.   Accordingly, the court recommends that defendant Corzine's motion for summary judgment be granted as to plaintiff's First Amendment retaliation claim related to the move of his wheelchair pusher.

---

[12] In the kite, plaintiff states: "there was a situation happen[ed] in our dorm and other inmates included my pusher in their crap and he was put in another wing" (#55-1, Ex. H, p. 2).

**3.   Eighth Amendment Deliberate Indifference to a Serious Medical Need**

A prisoner's claim of inadequate medical care arises under the Eighth Amendment.  *See Whitley v. Albers*, 475 U.S. 312,   319 (1986).  The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard— that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).  A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs.  *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104).  In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other."  *Id.* at 836.  To prove deliberate indifference, a plaintiff must

demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Defendant Corzine claims that he could not have been deliberately indifferent to plaintiff's serious medical needs because, as he states in his declaration, he was not involved in any way in the June 30, 2010, bed move of plaintiff's wheelchair pusher or with any decision regarding the bed move, and was not even aware of the June 30, 2010 bed move until after he returned from leave several days later (#48, p. 7; #61, Ex. A).

As discussed, the court has concluded that Corzine has presented evidence to demonstrate an absence of a dispute of material fact as to his involvement in the bed move of plaintiff's wheelchair pusher and that plaintiff has offered only his conclusory allegations in response. Accordingly, the court recommends that defendant Corzine's motion for summary judgment be granted as to plaintiff's Eighth Amendment retaliation claim related to the move of his wheelchair pusher.

### 4. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Where state action "does not implicate a fundamental right or suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Plaintiff alleges that Corzine deviated from standard practice when he retaliated against plaintiff by interfering with his medical treatment by way of moving his wheelchair pusher (#8, p. 9 ("I am not aware of any other inmate having their medical treatment stop[p]ed or delayed because of exercising his civil rights.")).  However, summary judgment should be granted in Corzine's favor on the retaliation claim because Corzine has presented evidence that he was in no way involved in the bed move.  As such, the court recommends that summary judgment necessarily be granted in Corzine's favor on the Fourteenth Amendment equal protection claim that Corzine treated plaintiff differently from other inmates when he retaliated against him.

The court therefore concludes that Corzine has demonstrated that no genuine issue of material fact exists with respect to any claim against him.  Thus, the court recommends that summary judgment be granted in his favor on all counts.

## B. Defendant Rexwinkel's Second Motion for Summary Judgment

### 1. Eighth Amendment Deliberate Indifference to a Serious Medical Need

As this court indicated that it would grant leave, defendant Caseworker Rexwinkel filed a motion for summary judgment on September 26, 2013 (#68).  She argues that plaintiff cannot prevail on his Eighth Amendment claim that she acted with deliberate indifference to his serious medical needs by refusing to assign plaintiff a wheelchair pusher.  *Id*. at 2-3.

Rexwinkel contends that she never received a written request for a wheelchair pusher from plaintiff.[13]  *Id*. at 7.  She sets forth the following in her sworn declaration:  after Andre Woods, plaintiff's wheelchair pusher, was moved, she recalls asking three or four inmates if they would be willing to act as plaintiff's wheelchair pusher.  *Id*. at 3; Ex. C.  She does not recall which inmates she

---

[13] Rexwinkel attaches as exhibits two kites, only one of which has to do with a wheelchair pusher (and is addressed to Lisa Walsh) (#68, Ex. B).  She also attaches the declaration of a NNCC custodian of records who attests that these are the only two kites in plaintiff's institutional file from 2010-2012 (#68, Ex. A).

asked, but they all declined.  She never refused to assign plaintiff a wheelchair pusher.  She often observed plaintiff using his feet to move himself around in his wheelchair, and she was unaware of any substantial risk of serious harm to plaintiff from pushing himself around.  *Id*.

Rexwinkel includes an authenticated medical order dated November 9, 2009 for Velcro-strap sneakers for plaintiff (#68, Ex. F).  The order indicates that plaintiff needed special sneakers because he "needs to use heels to get around in chair."  *Id*.

Rexwinkel also provides the sworn declaration of NNCC Associate Warden Elizabeth Walsh (#68, Ex. D).  Walsh states that at the time in question (as well as presently) no written NDOC or NNCC policy existed regarding the assignment of wheelchair pushers.  The unwritten NNCC policy was and is that inmates who have been approved by authorized medical staff for a wheelchair pusher are responsible for finding another inmate willing to act as wheelchair pusher.  For safety and security reasons, inmates are not forced to act as wheelchair pushers.   When an inmate agrees to serve as a wheelchair pusher, his name is submitted to caseworker staff; if no custody, disciplinary or security issues are identified, the arrangement will typically be approved.  *Id*.

In his opposition, plaintiff argues that Rexwinkel "fails to inform" the court that the reason the inmates declined the assignment was because Rexwinkel refused to give them their ten days of work credit each month (#70, p. 5).  Plaintiff states that inmate Gary Vernon took the assignment but quit two weeks later when Rexwinkel told him that he would not receive his ten days' credit per month.  *Id*.  He provides his sworn affidavit, in which he states:  "Rexwinkel refused to assign a wheelchair pusher and give the pusher his work credit of (10) days a month."  *Id*. at 11.  He contends that without someone to push him he had to struggle to use his hands and legs to get to the cafeteria and medical appointments, which greatly increased his pain.  *Id*. at 7.  He claims that as a result, he

suffered an intestinal hernia and he also now takes pain medication because the pain in his hands and legs is much more severe (*Id*.; #8, p. 12).

Plaintiff includes several kites, including one dated June 27, 2011 that he allegedly submitted to Rexwinkel requesting a wheelchair pusher and that the inmate who serves as such receive the appropriate work credit (#70, Ex. C). However, none of the kites bears any indication that they were received by staff –no receiving staff signature, no date received, and no staff response (#70, Ex.'s B, C, D, and E). None of these is either of the two kites that, according to the NNCC custodian of records, is in plaintiff's institutional file (#68, Ex. B; #73, p. 4).

In her reply, Rexwinkel's only response to the claim that the reason no inmate agreed to serve as wheelchair pusher was because she refused to give them work time credits is to say: "[t]his assertion and argument fail to defeat Rexwinkel's entitlement to summary judgment because it is unsupported by any evidence" (#73, p. 4). Rexwinkel utterly fails to address the fact that plaintiff has presented his sworn declaration—precisely the type of evidence on which *she* relies to demonstrate her entitlement to summary judgment.

Moreover, absent from defendant's briefing is any discussion regarding what happens at NNCC when no inmate will agree to serve as wheelchair pusher for a wheelchair-bound inmate. Rexwinkel asserts that she did not perceive a substantial risk of serious harm to plaintiff when he used his feet to try to push his wheelchair around. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *See, e.g.*, *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe, Nev*., 290 F.3d 1175, 1187-88 (9th Cir. 2002). However, *the very obviousness of*

1  *the risk may be sufficient* to establish knowledge.  *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*,

2  70 F.3d 1074, 1077 (9th Cir. 1995) (emphasis added).  It is undisputed that NNCC's Dr. Gedney

3  directed in April 2010 that plaintiff be allowed to have a wheelchair pusher (#70, Ex. A-1).  It

4  appears beyond question to this court that not providing such assistance to an inmate who uses a

5  wheelchair—especially one such as plaintiff who suffers from serious conditions including

6  neuropathy in his hands and legs—creates an obvious risk of serious harm to that inmate.

7          Accordingly, as the court is presented with conflicting declarations by plaintiff and

8  defendant, a genuine dispute of material fact exists as to whether defendant Rexwinkel refused or

9  interfered with plaintiff's securing a wheelchair pusher and thus acted with deliberate indifference to

10  his serious medical needs in violation of plaintiff's Eighth Amendment rights.  Therefore, the court

11  recommends that defendant Rexwinkel's motion for summary judgment be denied.

12          **2.   Qualified Immunity**

13          Rexwinkel also argues that she is entitled to qualified immunity.  "The doctrine of qualified

14  immunity protects government officials from liability for civil damages insofar as their conduct does

15  not violate clearly established statutory or constitutional rights of which a reasonable person would

16  have known."  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting

17  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In considering a claim of qualified immunity, the

18  court must determine 'whether the facts that plaintiff has alleged … make out a violation of a

19  constitutional right,' and 'whether the right at issue was clearly established at the time of the

20  defendant's alleged misconduct.'"  *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

21  Whether a right is clearly established turns on the "objective legal reasonableness of the action,

22  assessed in light of the legal rules that were clearly established at the time it was taken."  *Id*.  "[A]ll

23  but the plainly incompetent or those who knowingly violate the law have immunity from suit;

officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation." *Id*.

When analyzing a claim of qualified immunity, the court must view the facts in the light most favorable to plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, there are outstanding questions of material fact as to whether Rexwinkel refused to find a wheelchair pusher for plaintiff or interfered with his ability to identify one. When viewing the facts in the light most favorable to plaintiff, defendant Rexwinkel refused to arrange a wheelchair pusher for plaintiff in deliberate indifference to his serious medical needs. The general law concerning plaintiff's constitutional claims was clearly established at the time of the events alleged in plaintiff's complaint. *See Hutchinson*, 838 F.2d at 394 (under the Eighth Amendment, a prison official's intentional interference with a prisoner's medical treatment evidences deliberate indifference). There is simply no merit to the argument that defendant Rexwinkel should be shielded from liability because she did not know that deliberate indifference to such an obvious, serious risk to plaintiff's health and safety is unlawful or because she believed such conduct was reasonable.

Upon resolution of the factual issues, defendant Rexwinkel may be relieved of liability; however, if plaintiff's version of events was to prevail at trial, a jury might decide that the conduct alleged amounted to a constitutional violation. Under such circumstances, the alleged actions are not protected by qualified immunity. Accordingly, the court recommends that defendant Rexwinkel's motion for summary judgment based on qualified immunity be denied.

## IV. CONCLUSION

Based on the foregoing, and for good cause appearing, the court recommends that defendants Corzine's and Rexwinkel's motion for summary judgment (#48) be **GRANTED IN PART** as to all claims against defendant Corzine and **DENIED IN PART** as to all claims against defendant

Rexwinkel.  The court further recommends that defendant Rexwinkel's second motion for summary judgment (#68) be **DENIED**.  The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to FED.R.APP.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant Corzine's and Rexwinkel's motion for summary judgment (#48) be **GRANTED IN PART** and **DENIED IN PART** as follows:

**IT IS RECOMMENDED** that defendants' request to dismiss defendant Rexwinkel for lack of personal participation be **DENIED**.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **GRANTED** as to plaintiff's First Amendment retaliation claims.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **GRANTED** as to plaintiff's Eighth Amendment deliberate indifference claim.

**IT IS FURTHER RECOMMENDED** that defendant Corzine's motion for summary judgment be **GRANTED** as to plaintiff's Fourteenth Amendment equal protection claim.

1    **IT IS FURTHER RECOMMENDED** that defendant Rexwinkel's second motion for

2   summary judgment (#68) be **DENIED**.

3        **DATED:** February 4, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**